## THOMPSON, MASTER AND CLAIMANT OF THE STEAMSHIP "WESTMEATH," &c., *v.* LUCAS ET AL.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 391. Argued December 9, 1919.—Decided March 29, 1920.

Decided on the authority of *Strathearn S. S. Co.* v. *Dillon, ante,* 348. P. 363.

258 Fed. Rep. 446, affirmed.

THE case is stated in the opinion.

*Mr. L. deGrove Potter,* with whom *Mr. John M. Woolsey* was on the brief, for petitioner:

This section is ambiguous and is not expressly applicable to foreign seamen on a foreign vessel. Considering the purpose as disclosed by the act and its title, it is quite evident it was not the intention of Congress to legislate for the welfare of foreign seamen, but for the welfare of American seamen alone.

As the meaning is doubtful and as adherence to the strict letter would lead to injustice or contradiction, it is the duty of the court to give the statute a reasonable construction consistent with the general principles of law and comity, and, so far as practicable, to reconcile the different provisions to make them consistent and harmonious.

As this statute is penal, and in derogation of the common law, it should be construed strictly. *Sandberg* v. *McDonald,* 248 U. S. 185; *Neilson* v. *Rhine Shipping Co., id.* 205.

If Congress had intended that this section should apply to foreign seamen on foreign vessels, temporarily within a

harbor of this country, in derogation of contracts made on foreign soil, and in contravention of the long established rules of comity and the law of nations it would expressly have provided in the act that it should be so applicable.

This section, and all the sections of the act, deal with American seamen and make provisions for their benefit and safety. *Sandberg* v. *McDonald*, 248 U. S. 195.

It is a general rule of law, well recognized in this country as well as in most other civilized countries, that a contract valid where made is valid everywhere, and should be enforced unless against public policy, natural justice or morality. Story, Conflict of Laws, 8th ed., § 242.

When once the rights and obligations of a particular transaction are fixed, in accordance with the principles of law and policy of the place where they become fixed, it cannot be admitted that these rights and obligations are subject to being varied according to the place or country or time of their enforcement. This fundamental principle is attributed to Cicero by Mr. Justice Swayne in the opinion of this court in the case of *Wilson* v. *McNamee*, 102 U. S. 572, 574. The enforcement by one sovereign of rights accrued under a valid contract made in the jurisdiction of another sovereign is part of the comity and law of nations.

The law of nations is a part of the law of the land and should be followed by the courts of the United States. *The Amelia*, 1 Cranch, 1; *The Charming Betsy*, 2 Cranch, 64, 118; *Holmes* v. *Jennison*, 14 Pet. 540, 569.

The contract involved herein, whereby it was provided that no wages were due the libellants until the completion of the voyage, is not contrary to public policy, good morals, or natural justice. Such a contract is valid under the laws of this country as well as those of Great Britain.

This contract is not contrary to public policy simply

because it is in conflict with the provisions of § 4530 of the Revised Statutes. *Northern Pacific R. R. Co.* v. *Babcock*, 154 U. S. 190. See *Sandberg* v. *McDonald*, 248 U. S. 185, 196.

That class of cases represented by *The Kensington*, 183 U. S. 263, and *Union Trust Co.* v. *Grosman*, 245 U. S. 412, on which the decision of the Circuit Court of Appeals in *The Strathearn*, 239 Fed. Rep. 583, was based, are not applicable here. They simply affirm the well recognized principle that the courts of this country will not enforce a foreign contract against public policy. See *Cuba R. R. Co.* v. *Crosby*, 222 U. S. 473, 478. The Seamen's Act, in so far as it is sought to be invoked in this case, does not place any limitation on the enforcement of an obligation but creates a pecuniary right and obligation in contravention of the terms of a valid foreign contract.

It has always been recognized by the courts as well as the executive branch of the government of this country that the laws and statutes of any State should not be given extra-territorial force and effect.

The English rule is laid down in *Lloyd* v. *Guibert*, L. R. 1 Q. B. 115, 127; the French rule can be found in *The Dio Adelphi*, Nov., 1879, 91 Jour. du Palais, 1880, pp. 603, 609. In *The Apollon*, 9 Wheat. 362, Mr. Justice Story said, p. 370: "The laws of no nation can justly extend beyond its own territories, except so far as regards its own citizens." *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, 357; *United States* v. *Palmer*, 3 Wheat. 610, 631.

This court in the cases that have come before it has construed the act under consideration as not having any extra-territorial force. *Sandberg* v. *McDonald*, and *Neilson* v. *Rhine Shipping Co.*, *supra*. To the same effect are: *The Italier*, 257 Fed. Rep. 712; *The Nigretia*, 255 Fed. Rep. 56; *The Belgier*, 246 Fed. Rep. 966; *The State of Maine*, 22 Fed. Rep. 734; 30 Ops. Atty. Gen. 441. *Patter-*

*son* v. *Bark Eudora*, 190 U. S. 169, is not an authority to the contrary.

The provisions would have ample operation if confined to contracts of seamen on a foreign vessel when made while the vessel is in a harbor of the United States, and then only to contracts of American seamen. See *The Ixion*, 237 Fed. Rep. 142; *The Italier*, 257 Fed. Rep. 712.

Where a controversy concerns the rights and duties of the crew to the ship or among themselves and not involving a breach of the peace, on a foreign vessel on the high seas, or in the port of another country, the law of the flag of the vessel governs the rights and liabilities of the parties just as conclusively as though the controversy had arisen on land within the territorial jurisdiction of the country whose flag the vessel flies, for a ship has long been regarded by the courts and by writers on international law as a floating island of the country to which she belongs. Dicey, Conflict of Laws, 2d ed., § 663; Wharton, Conflict of Laws, § 473; Minor, Conflict of Laws, § 195; Bluntschli, § 317; 1 Calvo Droit International, 4th ed., 552; Book VI, § 3; Rutherford, II, c. 9. *Wildenhus's Case*, 120 U. S. 1, 12; *Wilson* v. *McNamee*, 102 U. S. 572, 574; *The Hamilton*, 207 U. S. 398; Moore, International Law Dig., vol. II, §§ 204, 207; Secretary Bayard to White, Charge d'Affairs at London, March 1, 1889, For. Rel. 1889, 447.

Where an act of Congress is passed over opposition of a minority, as in this case, it is to be considered that the words of the act represent all the majority deemed it safe to ask. *Lincoln* v. *United States*, 202 U. S. 484.

If the provisions of this section which do not specifically apply to foreign seamen of foreign vessels are construed by this court to apply to the case at bar, the effect of such a construction would be tantamount to holding that Congress may legislate as to contracts made on foreign soil and affecting only foreigners. Part of the section provides·

"And all stipulations in the contract to the contrary shall be void." The contract was made at a port of Australia, and, if the words quoted are held to apply to the contract, this court will be sanctioning interference by Congress with the law of a foreign friendly power. That Congress possesses any such power has been denied by this court. *The Apollon,* 9 Wheat. 362.

The Federal Government possesses only those powers which are expressly or impliedly conferred on it by the Constitution. *South Carolina* v. *United States,* 199 U. S. 437. By no possible stretch of the power to regulate commerce can it be said that Congress possesses the power to regulate contracts of foreign shipowners and foreign seamen made in Australia. *Brown* v. *Duchesne,* 19 How. 183, 198.

Interference with the liberty to contract on such terms as may be advisable to the parties to the contract is a deprivation of liberty, without due process of law. *Allgeyer* v. *Louisiana,* 165 U. S. 578.

It is true that consistently with the Fifth Amendment Congress may legislate in such a manner as to deprive persons of the liberty of entering into certain contracts, but the justification for such legislation has always been motives of policy based on the exercise of police power. *Patterson* v. *Bark Eudora,* 190 U. S. 169.

In order to justify any legislation under the police power it must appear plainly that it has a tendency to rectify the conditions which the legislative body sought to remedy. The courts will look through the form to the substance. *Booth* v. *Illinois,* 184 U. S. 425, 429. The section does not even attempt to legislate to the benefit of the seaman. It goes directly contrary to the policy of the early Act of 1898, which was held constitutional in *Patterson* v. *Bark Eudora, supra.*

The only effect that the act has produced up to the present is that seamen on incoming vessels habitually

demand one-half wages under it immediately upon arrival, and leave the ship at once. Crews are constantly changing, discipline is impaired, and unnecessary expenses are incurred.

Although Congress is not prohibited from passing laws impairing the obligation of contracts, it cannot deprive a person of property without due process of law. *Hepburn* v. *Griswold*, 8 Wall. 603, 623; *McCracken* v. *Hayward*, 2 How. 608, 612; *Sinking-Fund Cases*, 99 U. S. 700, 718; Cooley, Const. Lim., 7th ed., 507. If this act be applicable to the case at bar, Congress did not merely pass a law impairing the obligation of a contract, by taking away the remedy for the enforcement of a contract, but created a liability on the shipowner in direct contravention of the terms of a legal, binding contract; and therefore violated the Constitution by taking property without due process of law.

*Mr. W. J. Waguespack*, with whom *Mr. Silas B. Axtell* was on the brief, for respondents.

MR. JUSTICE DAY delivered the opinion of the court.

This case was argued at the same time as Number 373, just decided, *ante*, 348. In this case the libellants shipped as part of the crew of the British Steamer Westmeath for a voyage not to exceed one year, before the expiration of which time the vessel arrived in the harbor of New York, where she loaded and discharged cargo. A demand was made for one-half wages under § 4 of the Seamen's Act of 1915. The demand was refused, and an action was begun for full wages. A defense was set up that the libellants were deserters, and, therefore, not entitled to recover. The District Court and the Circuit Court of Appeals held that the libellants' case was made out under the statute. 258 Fed. Rep. 446.

The case is controlled by principles which governed the disposition of No. 373. The difference being that it appears in this case that demand was made more than five days after the vessel had arrived in the United States port. In all other respects as to the constitutionality and construction of the statute our judgment in the former case is controlling. It follows that the decree of the Circuit Court of Appeals must be affirmed.

*Affirmed.*